UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:06CV-201-H

ERIN GOODMAN                                                                                            PLAINTIFF

V.

UNITED STATES OF AMERICA                                                                  DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff Erin Goodman ("Goodman") allegedly sustained injuries as the result of medical malpractice at a Veterans Affairs hospital. Prior to filing this suit, Plaintiff filed an administrative claim pursuant to the requirements of the Federal Tort Claims Act ("FTCA"). After negotiations between the parties, Plaintiff's counsel sent a letter to the United States Claims Attorney accepting its lump sum offer as settlement for Plaintiff's claim. Approximately two weeks later, Plaintiff apparently changed her mind and informed her attorney that she no longer wished to engage in the settlement. This lawsuit followed. Upon motion of the United States, this Court holds that the settlement offer and acceptance precludes this federal lawsuit.

I.

Goodman was allegedly injured as a result of medical malpractice at the Ireland Army Community Hospital at Fort Knox, Kentucky. On May 12, 2004, Plaintiff's counsel, on Plaintiff's behalf, filed an administrative claim with the U.S. Army Claims Service pursuant to the FTCA. Following a series of offers and counteroffers, the Army made a lump sum offer. In a letter dated January 25, 2006 ("the January 25 letter") to the United States claims attorney, Plaintiff's attorney stated:

> This is to advise that Erin Goodman accepts the government's offer of [redacted dollar figure] to settle her pending FTCA claim. Please forward for signature those documents required to consummate the settlement and I will insure their timely execution.

Plaintiff stated in her deposition that she knew of the final settlement offer, that she consulted with her attorney about that settlement offer, that she knew her attorney was going to send the January 25 letter, and that she had approved the amount of settlement prior to the letter being sent.

After receiving the January 25 letter, the claims attorney for the United States sent a letter dated January 31, 2006 ("the January 31 letter"), confirming Plaintiff's acceptance of the United States' offer and forwarding the documents designed to memorialize the agreement.  Several weeks later, after discussing the issue with family members, Plaintiff decided that she did not want to accept the settlement offer after all.

II.

The parties agree that state law is determinative of settlement matters in FTCA cases. *See Reo v. United States Postal Service*, 98 F.3d 73, 76 (3d Cir. 1996).  Under Kentucky law, if a trial court determines that express or actual authority was given to a client's attorney, "the settlement should be enforced."  *Clark v. Burden*, 917 S.W.2d 574, 577 (Ky. 1996).  In this case, Goodman clearly gave her attorney express authority to settle the case; she admitted as much during her deposition.

Plaintiff attempts to argue that the settlement offer was never accepted because the January 25 letter simply was a request for the United States "to forward the settlement documents for [Plaintiff's] review."  Plaintiff argues that *Edmondson v. Pennsylvania Nat'l Mut.*

*Cas. Ins. Co.*, 781 S.W.2d 753 (Ky. 1989), controls here.  In *Edmondson*, the Kentucky Supreme Court ruled that "there is no contract principle, in insurance law or otherwise, converting an offer of settlement into a binding contract unless and until it is accepted in accordance with its terms." *Id.* at 756.  Plaintiff seems to argue that once Plaintiff had considered the terms of the settlement offer, she changed her mind about accepting the settlement.

  Neither of these contentions can succeed.  The January 25 letter from Plaintiff's counsel did not request settlements documents so that the Plaintiff could "review" them.  The January 25 letter actually requested the documents for Plaintiff's "signature" to "consummate the settlement," and Plaintiff's attorney further "insure[d] their timely execution and return."  To suggest that the January 25 letter constituted part of the ongoing negotiations about the terms of the settlement is simply not borne out by the letter's contents.  Furthermore, there were no further material terms of the settlement agreement contained in the "Judgment Fund Voucher for Payment" enclosed in the January 31 letter.  It was a simple release form, not a more detailed offer including additional, potentially objectionable terms.

  Quite simply, a binding settlement agreement can be created without the signing of a formal settlement contract.  The Kentucky Supreme Court has made clear this basic principle of contract law:

> [W]here the parties reach an agreement through correspondence, intending that the agreement shall be subsequently expressed formally in a single paper or document, which, when signed, should be the evidence of what had been agreed upon, the obligatory character of the agreement cannot ordinarily be defeated by the failure of either party to sign the formal contract. If the court can see from the writings or correspondence that the minds of the parties have met, that a proposal has been submitted by one party which has been accepted by the other, and that the terms of the contract have been in all respects definitely agreed upon, one of the parties cannot evade or escape from his obligation by refusing to sign the formal

> contract, which the parties understood was subsequently to be drawn and executed.

*Dohrman v. Sullivan*, 220 S.W.2d 973, 975-76 (Ky. 1949). The clear law of the Commonwealth of Kentucky and public policy alike dictate that the administrative settlement agreed to in the January 25 letter be enforced.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion to dismiss is SUSTAINED and Plaintiff's claims against Defendant are DISMISSED WITH PREJUDICE.

This is a final order.

cc: Counsel of Record